UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRA A. SATCHEL,

      Plaintiff,

v.                                        Case No.  8:05-cv-2239-T-24 TBM

SCHOOL BOARD OF HILLSBOROUGH
COUNTY,

      Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Dismiss.  (Doc. No. 46). Plaintiff opposes the motion.  (Doc. No. 49).

**I.  Background**

Plaintiff Debra Satchel, proceeding pro se, is an African-American woman diagnosed with Post-Traumatic Stress Disorder and depression.  (Doc. No. 42, ¶ 5).  She worked for Defendant School Board of Hillsborough County until she was terminated on October 13, 2004. (Doc. No. 42, ¶ 19).  Thereafter, she filed suit against Defendant for alleged discriminatory treatment and breach of contract that occurred while she was a teacher for the school district.

In her third amended complaint[1] (Doc. No. 42), Plaintiff states that the action is brought

---

[1] Plaintiff filed her original complaint on December 7, 2005.  (Doc. No. 1).  She filed an amended complaint on January 3, 2006.  (Doc. No. 4).  On March 6, 2006, she filed a proposed second amended complaint (Doc. No. 11), which the Court struck since she failed to seek leave of Court.  Thereafter, she filed two more versions of a proposed second amended complaint, each one being seventy-one pages long.  (Doc. No. 23, 26).  At the preliminary pretrial conference held on April 26, 2006, the Court addressed Plaintiff's attempts to amend her complaint.  The Court allowed Plaintiff to file a second amended complaint that was not longer than twenty-five pages.
On May 14, 2006, Plaintiff filed a six page second amended complaint.  (Doc. No. 38).

pursuant to Title VII. Plaintiff's third amended complaint contains three counts: (1) retaliation due to race and disability, (2) breach of contract, and (3) hostile work environment. In response, Defendant filed the instant motion to dismiss.

## II. Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Id. at 47. All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

---

Thereafter, Plaintiff sought leave to file a third amended complaint. (Doc. No. 39). The Court granted the motion, giving Plaintiff one final opportunity to submit an amended complaint that complied with the Court's April 26, 2006 Order regarding length, footnotes, exhibits, and organization. (Doc. No. 41). In that Order, the Court reminded Plaintiff that she must identify each claim that she is pursuing in the title of the count and that she should put each claim that she is pursuing in a separate count, with the facts supporting each claim set forth in the paragraphs included in each count.

**III. Motion to Dismiss**

Defendant seeks dismissal of all three of Plaintiff's claims. Accordingly, the Court will analyze each claim.

### A. Retaliation Due to Race and Disability[2]

Plaintiff alleges that Defendant retaliated against her. In order to state a prima facie case of retaliation, Plaintiff must allege "that (1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." Little v. United Technologies, Carrier Transicold Division, 103 F.3d 956, 959 (11th Cir. 1997)(citation omitted). Defendant argues that Plaintiff fails to state a claim for retaliation, because Plaintiff cannot show that she engaged in a statutorily protected activity.

#### 1. Retaliation Under Title VII

Under Title VII, there are two types of statutorily protected activities. Specifically, Title VII provides that "[a]n employee is protected from discrimination if (1) 'he has opposed any practice made an unlawful employment practice by this subchapter' (the opposition clause) or (2) 'he has made a charge, testified, assisted, or participated in any manner in an investigation,

---

[2]Plaintiff states in her third amended complaint that she brought this action pursuant to Title VII. However, disability retaliation claims would be brought pursuant to the Americans with Disabilities Act ("ADA"). Therefore, Defendant argues that to the extent that Plaintiff's retaliation claim is based on her disability, it should be dismissed, because Title VII does not encompass such claims. The Court rejects Defendant's argument.
  While Plaintiff has not alleged that her retaliation claim is based in part on the ADA, the Court will construe her claim as such, since Plaintiff is pro se and the Court is liberally construing her complaint. The elements of a retaliation claim under the ADA are the same as those under Title VII. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1328 (11th Cir. 1998)(citation omitted).

3

proceeding, or hearing under this subchapter' (the participation clause)." Clover v. Total System Services, Inc., 176 F.3d 1346, 1350 (11th Cir. 1999)(citing 42 U.S.C. § 2000e-3(a)). Upon review of the allegations in the third amended complaint, it appears that Plaintiff is relying on the following instances as statutorily protected activities to support her retaliation claim under Title VII: (1) in April of 2001, she filed a grievance against William Orr, Assistant Principal for Curriculum at Armwood High School; (2) in September of 2001, Plaintiff reported to Daniel Riveiro, the Principal of Jefferson High School, that she was being harassed by Ronald Cugno; and (3) she expressed her views in letters to the editors following statements in two newspapers attributed to Board member, Joe Newsome. However, the Court agrees that these incidents are not statutorily protected conduct under Title VII.

With regards to the grievance that Plaintiff filed against William Orr, the only facts regarding the substance of the grievance are contained in an exhibit ("the Story") attached to the complaint.[3] In the Story, Plaintiff alleges that Orr gave Plaintiff a written reprimand due to her discipline plan of sending her students to in-school suspension when they were disruptive. (Story, p. 4). In response to the reprimand, Plaintiff filed grievances against Orr for harassment and failure to follow policy. (Story, p. 4). However, the complaint and the Story are completely devoid of any allegation that in her grievance against Orr, she complained that she was being harassed based on her race. Since Plaintiff does not allege that the grievance was a complaint that Orr had harassed her based on her race, the grievance cannot be considered a statutorily

---

[3]Plaintiff attaches a document titled, "My Story–The Way I Saw It," (hereinafter referred to as "the Story") to the complaint, in which she gives a narrative of events that allegedly occurred while she worked for Defendant. The Court has considered the allegations in the Story in order to explain the limited allegations in the complaint.

protected activity that can support a retaliation claim under Title VII.[4] As such, the Court grants Defendant's motion to the extent that it seeks dismissal of the retaliation claim to the extent that it is based on the grievance that Plaintiff filed against Orr.

With regards to Plaintiff's allegation that she reported Ronald Cugno's harassment to Daniel Riveiro, the Principal of Jefferson High School, the only facts regarding the substance of the reported harassment are contained in the Story. In the Story, Plaintiff alleges that she told Riveiro that Cugno, Assistant Principal for Administration, would often visit her classroom and that his visits would incite, rather than calm, her students. (Story, p. 6-7). Plaintiff also told Riveiro that Cugno had required her to send all referrals to him rather than to student affairs. (Story, p. 7). Again, the complaint and the Story are completely devoid of any allegation that Plaintiff told Riveiro that Cugno's alleged harassment was based on her race.[5] As such, Plaintiff's complaint to Riveiro about Cugno cannot be considered a statutorily protected activity that can support a retaliation claim under Title VII.[6] Therefore, the Court grants Defendant's

---

[4]Likewise, since there is no allegation that the grievance was a complaint that Orr had harassed her based on her disability, the grievance cannot be considered a statutorily protected activity that can support a retaliation claim under the ADA.

[5]The allegations in the Story do not always contain dates to provide a reference as to when the alleged incidents occurred, although the allegations appear to be stated in chronological order. As such, it appears that her complaint to Riveiro that she describes in the third amended complaint is the one set forth on page seven of the Story. Later on in the Story, on page twelve, Plaintiff describes another meeting with Riveiro, but she states in that part of the Story that she told Riveiro at that time that she would not speak to him without the presence of counsel and then she remained silent (and thus there is no allegation that she complained of race based harassment at that time). Thereafter, on page thirteen of the Story, she describes incidents that occurred in October and November, which would have occurred after her September meeting with Riveiro that is alleged in the complaint.

[6]Likewise, since there is no allegation that Plaintiff complained to Riveiro that Cugno had harassed her based on her disability, the complaint to Riveiro cannot be considered a statutorily protected activity that can support a retaliation claim under the ADA.

motion to the extent that it seeks dismissal of the retaliation claim to the extent that it is based on Plaintiff's complaint to Riveiro about Cugno.

With regards to Plaintiff's allegation that she expressed her views in letters to the editors following statements in two newspapers attributed to Board member, Joe Newsome, the only facts regarding the letters are contained in the Story. In the Story, Plaintiff alleges that a Board member made public statements about the mental state of a whistleblower, Douglas Erwin. (Story, p. 14). Plaintiff states that she responded to the Board member's statements by writing a letter that was not published. (Story, p. 14). However, the complaint and the Story are completely devoid of any allegation that letter or letters consisted of complaints to Defendant or that the letter or letters contained complaints of race-based discrimination. As such, Plaintiff's letters cannot be considered a statutorily protected activity that can support a retaliation claim under Title VII.[7] Therefore, the Court grants Defendant's motion to the extent that it seeks dismissal of the retaliation claim to the extent that it is based on these letters.

### 2.  Retaliation Under the ADA

Upon review of the allegations in the third amended complaint, it appears that Plaintiff is relying on her request for accommodations as a statutorily protected activity to support her retaliation claim under the ADA. Specifically, Plaintiff alleges in her complaint that in July of 2002, Plaintiff requested accommodations from Defendant. A request for an accommodation can constitute a statutorily protected activity under the ADA if Plaintiff had a good faith, objectively reasonable belief that she was entitled to the accommodations that she requested. See Standard,

---

[7]Likewise, since there is no allegation that the letters contained complaints of any disability-based discrimination, the letters cannot be considered a statutorily protected activity that can support a retaliation claim under the ADA.

161 F.3d at 1328.

Defendant argues that this claim must be dismissed, because Plaintiff fails to allege that she had a disability recognized by the ADA or that an adverse employment action was taken against her because she request accommodations.  The Court rejects these arguments.

Plaintiff alleges in the third amended complaint that she has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and depression.  A person diagnosed with PTSD or depression may be considered disabled under the ADA if the PTSD or depression substantially limits a major life activity for that person.[8]  See Farley v. Nationwide Mutual Ins. Co., 197 F.3d 1322, 1330 n.2 (11th Cir. 1999); Pritchard v. Southern Co. Svcs., 92 F.3d 1130, 1132 (11th Cir. 1996); Johnston v. Henderson, 144 F. Supp.2d 1341, 1350 (S.D. Fla. 2001).  Furthermore, Plaintiff alleges that Defendant retaliated against her for requesting accommodations, and the Story contains allegations of actions taken against her, including her termination.[9]  (Doc. No. 42, ¶ 16).  Accordingly, the Court denies Defendant's motion to the extent that it seeks dismissal of Plaintiff's retaliation claim to the extent that it is based on her request for accommodations.

---

[8]"'The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual.'" Pritchard v. Southern Co. Svcs., 92 F.3d 1130, 1132 n.3 (11th Cir. 1996)(citation omitted).

[9]The Court expresses no opinion as to whether any of the incidents described in the Story equate to an adverse employment action other than her termination, which clearly is an adverse employment action.  It is not clear to the Court which incidents, if any, other than her termination, Plaintiff is relying on as an adverse employment action.  Furthermore, despite the Court's finding that Plaintiff's termination is an adverse employment action, the Court expresses no opinion as to whether her termination was causally related to her request for accommodations, since Defendant did not raise this argument.

### 3. Conclusion

As explained above, Plaintiff's retaliation claim remains only to the extent that it is based on her request for accommodations. Otherwise, Defendant's motion is granted as to Plaintiff's retaliation claim.

### B. Hostile Work Environment

Plaintiff also asserts a hostile work environment claim based on her race.[10] Specifically, she alleges that Jeffrey Pelzer, Clara Gene Odell (head of the Vocational Department at Bloomingdale High School), Curtis Todd Bowden (Assistant Principal for Curriculum at Bloomingdale High School), and Elizabeth Stelter (Principal at Bloomingdale High School) created a hostile work environment and that Plaintiff complained about the harassment to Defendant. (Doc. No. 42, ¶ 29, 30; Story, p. 15).

In order to state a claim for a hostile work environment based on race, Plaintiff must allege: (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on her race; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment; and (5) that there is a basis for holding the employer liable. See Williams v. Asplundh Tree Expert Co., 2006 WL 2131299, at 4* (M.D. Fla. July 28, 2006)(citation omitted). Defendant moves to dismiss Plaintiff's hostile work environment claim, arguing that Plaintiff does not specifically allege that the harassment was based on her race.

While the Court acknowledges that the complaint does not specifically allege that the

---

[10]While the third amended complaint is not clear regarding the basis for the hostile work environment claim, Plaintiff states in her response to the motion to dismiss that the harassment was based on her race. (Doc. No. 49, p.3).

8

harassment was based on Plaintiff's race, the Court finds that such an assertion is implicit after reading the paragraphs included in the hostile work environment count. Specifically, Plaintiff alleges that certain people created a hostile work environment, she complained about it, and she filed a claim of discrimination based on race. (Doc. No. 42, ¶ 29, 30, 33). Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's hostile work environment claim.[11]

### C.  Breach of Contract

Plaintiff also asserts a breach of contract claim. Specifically, she alleges that she held a personal services contract in May of 2004 and that in terminating her employment on October 13, 2004, Defendant failed to comply with Florida Statute § 1012.33. Section 1012.33 sets forth the circumstances in which a teacher's contract can be terminated during the term of the contract.

Defendant moves to dismiss this claim, arguing that (1) the contract that Plaintiff attached to the complaint could not have been breached by her termination, because that contract was not in force at the time of her termination; and (2) § 1012.33 does not apply to her termination. The Court agrees with Defendant's arguments.

Defendant is correct that the contract that Plaintiff attached to the complaint could not have been breached by her termination in October of 2004, because that contract attached to the complaint was not in force at the time of her termination. The contract attached to the complaint

---

[11] The Court notes that the Story contains allegations of numerous workplace disputes between Plaintiff and others, but the Story does not specifically state that the alleged harassment was based on Plaintiff's race. However, since a liberal reading of the complaint leads the Court to conclude that Plaintiff has alleged that the harassment was based on her race, the Court will allow the hostile work environment claim to proceed. The Court warns Plaintiff, though, that if Defendant moves for summary judgment on this claim, Plaintiff will need to come forth with evidence to show that the alleged harassment was based on her race.

is for the 2003-2004 school year, and Plaintiff was terminated during the 2004-2005 school year. Therefore, Defendant could not have breached the contract attached to the complaint by terminating Plaintiff.

Furthermore, Defendant is correct that § 1012.33 does not apply to Plaintiff's termination. Section 1012.33, which sets forth the circumstances in which a teacher's contract can be terminated during the term of the contract, is inapplicable, because Plaintiff's employment with Defendant is governed by the Hillsborough County Teacher Tenure Act ("Tenure Act").[12] While Plaintiff argues that § 1012.33 superseded the Tenure Act, Plaintiff has not submitted any case law supporting her position. Instead, cases dealing with another county's tenure act have concluded that the Florida Statutes at issue in those cases did not supersede the county's tenure act. See Alford v. Duval County School Board, 324 So. 2d 174, 177 (Fla. 1st DCA 1975); Muldrow v. Board of Public Instruction of Duval County, 189 So. 2d 414, 415 (Fla. 1st DCA 1966); Harley v. Board of Public Instruction of Duval County, 103 So. 2d 111, 112 (Fla. 1958). As such, there is no basis for this Court to conclude that § 1012.33 superseded the Tenure Act in this case.

Plaintiff points to the contract attached to the complaint and argues that the provision in that contract that Plaintiff's employment will remain subject to the provisions of state law shows that the contract incorporated the provisions of § 1012.33 into the contract. The Court rejects this argument. To begin with, the contract attached to the complaint is not the contract at issue in this case, and as such, none of its provisions are relevant. Second, to the extent that the contract at issue contains the same language as that set forth in the contract attached to the

---

[12] A copy of the Tenure Act is attached to Doc. No. 46.

complaint, the Court finds that the cited provision does not make § 1012.33 applicable. Instead, the Court reads the cited provision as providing that all *applicable* state laws will apply to Plaintiff's employment.[13] This conclusion is supported by the fact that the sentence following the cited provision states: "Nothing herein is intended to nor will it be read as, amending, altering, or diminishing such law, policy, procedure, rule, or regulation." Thus, the contract does not make an otherwise inapplicable statute applicable to Plaintiff's employment.

Plaintiff also argues that since the Tenure Act does not provide the procedures for determining how to substantiate a charge of just cause to terminate her employment, § 1012.33 applies in order to provide such procedures. Plaintiff also appears to argue that since the definitions of just cause are different in the Tenure Act and in § 1012.33, § 1012.33 must apply. The Court rejects these arguments. The fact that the definitions of just cause are different does not show that § 1012.33 should apply. Furthermore, Section 5 of the Tenure Act sets forth the procedure for determining whether a teacher may be terminated, which includes notice, a hearing, the submission of evidence, and a vote by the county board of public education to determine whether the charge has been substantiated.

Thus, for the reasons stated above, the Court finds that Plaintiff's breach of contract claim must be dismissed.[14] Therefore, the Court grants Defendant's motion on this issue.

---

[13] The Court notes that the contract attached to the complaint does specifically state that Plaintiff's employment remained subject to the Tenure Act.

[14] Plaintiff also appears to argue that Defendant breached her contract by (1) causing her termination through the use of false testimony and fraudulent documents, and (2) not providing her with a post-termination administrative hearing. The Court rejects these arguments, as the allegations of fraud do not appear to be relevant to whether Defendant breached her employment contract. Furthermore, Plaintiff has not alleged that the contract provided for a post-termination administrative hearing, and the Tenure Act only provides for review of a termination decision by

11

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (Doc. No. 46) is **GRANTED IN PART AND DENIED IN PART**: The motion is **DENIED** to the extent that Plaintiff asserts a retaliation claim under the ADA based on her request for disability accommodations in Count I and to the extent that she alleges a racially hostile work environment in violation of Title VII in Count II; otherwise, the motion is **GRANTED.**

**DONE AND ORDERED** at Tampa, Florida, this 25th day of August, 2006.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Pro Se Plaintiff

---

the circuit court of Hillsborough County.