UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRA A. SATCHEL,

Plaintiff,

v. Case No. 8:05-cv-2239-T-24 TBM

SCHOOL BOARD OF HILLSBOROUGH COUNTY,

Defendant.
_____________________________________/

**ORDER**

This cause comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 66), which Plaintiff opposes (Doc. No. 74), and Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 71), which Defendant opposes (Doc. No. 75).

**I. Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. See id. When a moving party has discharged its burden, the non-moving party must

then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II. Background

Plaintiff Debra Satchel, proceeding pro se, is an African-American woman diagnosed with Post-Traumatic Stress Disorder and depression. She worked for Defendant School Board of Hillsborough County until she was terminated on October 13, 2004. (Doc. No. 42, ¶ 19). Thereafter, she filed suit against Defendant for alleged discriminatory treatment and breach of contract that occurred while she was a teacher employed by Defendant.

In her third amended complaint (Doc. No. 42), Plaintiff asserted three counts: (1) retaliation due to race and disability, (2) breach of contract, and (3) hostile work environment.

Defendant moved to dismiss the third amended complaint. The Court dismissed the breach of contract claim. (Doc. No. 51). With regards to the retaliation claim, the Court granted the motion to the extent that the retaliation claim was based on Plaintiff's race, and the Court denied the motion to the extent that the retaliation claim was based on Plaintiff's request for accommodations under the Americans with Disabilities Act ("ADA"). (Doc. No. 51).

With regards to the hostile work environment claim, it was unclear as to what basis the claim was made, but in her response to the motion to dismiss, Plaintiff appeared to base the hostile work environment claim on her race (Doc. No. 49, p. 3). The Court denied the motion to dismiss Plaintiff's hostile work environment claim to the extent that it was based on her race. (Doc. No. 41). However, the Court warned Plaintiff in its Order that there were no specific allegations that the alleged harassment was based on her race, and as such, if Defendant moved for summary judgment on her hostile work environment claim, Plaintiff would need to come forth with evidence to show that the alleged harassment was based on her race. (Doc. No. 51, p. 9, n.11).

Accordingly, the only claims that remain are (1) the retaliation claim based on Plaintiff's request for accommodations, and (2) the hostile work environment claim based on race. Defendant now moves for summary judgment on these claims.

**III. Defendant's Motion for Summary Judgment**

Defendant argues that it is entitled to summary judgment on Plaintiff's two remaining claims. Accordingly, the Court will analyze each claim.[1]

---

[1]The Court notes that there are cross-motions for summary judgment before the Court. However, the Court has drawn all inferences from the evidence in the light most favorable to Plaintiff and will resolve all reasonable doubts in her favor.

Additionally, the Court notes that Plaintiff does not submit a statement of facts, nor does she allege facts throughout her motion and response with citations to the record. Instead,

**A. Retaliation**

Plaintiff claims that she was retaliated against for requesting accommodations for her disabilities. Specifically, Plaintiff contends that on July 16, 2002, she mailed a letter to Richard Martinez, General Manager of Employee Relations for Defendant. (Doc. No. 72-19). In that letter, Plaintiff states that she is disabled and that she requests certain "accommodations."[2] (Doc. No. 72-19). Plaintiff sent a follow-up letter regarding her request for accommodations on

---

Plaintiff merely has filed fifty-one exhibits in support of her cross-motion for summary judgment. (Doc. No. 72). However, the Court "is under no obligation to plumb the record in order to find a genuine issue of material fact." Bender v. City of Clearwater, 2006 WL 1046944, at *17 (M.D. Fla. April 19, 2006)(citations omitted).

[2]She requested the following "accommodations":

1. A work environment free from bullying, hostility and harassment. This may be accomplished by:

   A. District-sponsored general ADA awareness training to coworkers and supervisors . . .

   B. District-sponsored training on bullying in the workplace with current research . . .

   C. District-sponsored training on nuances, innuendos and rumors, with strategies for minimizing their destructive nature . . .

   D. Posting the District's Civility Policy on the bulletin board of each department, the faculty cafeteria, and in a prominent place within the Main Office and Student Affairs . . .

2. A uniform discipline plan with specific procedures for specific student behaviors at [her] current assignment . . .
3. In the future, teaching schedule, instructional materials and curriculum framework prior to summer break
4. A maximum of one room change if schedule calls for traveling
5. Appropriate storage and instructional space in each classroom
6. A maximum of two preparations per traditional semester
7. Teacher duty at the beginning of the period
8. A locked storage area in TPA for personal belongings
9. Up-to-date training in all areas of Business Technology
10. Supervisor support and co-development of strategies to deal with foreseeable problems . . .
11. A co-authored procedure to evaluate the effectiveness of these accommodations, separate from the teacher assessment form, to be reviewed each semester
12. District assistance in securing formerly available auxiliary employment
13. Confidentiality

(Doc. No. 72-19). Plaintiff states that the only accommodation that she received was the one set forth in 1-D, above. (Doc. No. 67: Plaintiff's depo, p. 34-35).

September 29, 2002. (Doc. No. 26-11).

On June 22, 2004, Earl Lennard, Superintendent of Schools, sent a notice to Plaintiff informing her that he was recommending to Defendant that she be dismissed as a teacher. (Doc. No. 67, Ex. 7). On October 13, 2004, the School Board met to consider the Superintendent's recommendation to terminate Plaintiff's employment. (Doc. No. 68: Kipley affidavit, ¶ 7). At the hearing, the School Board considered the testimony of twelve witnesses, including Plaintiff. (Doc. No. 68, Ex. B). At the conclusion of the hearing, the School Board voted unanimously to uphold the recommendation to terminate Plaintiff's employment, due to its finding that Plaintiff violated three provisions of the Hillsborough County Teacher Tenure Act. (Doc. No. 68, Ex. B). Specifically, the School Board found that Plaintiff was insubordinate, persistently violated or willfully refused to obey laws or policies relating to public schools, and failed to demonstrate competency to perform the duties of employment in instruction, evaluation, and management of students in accordance with generally accepted standards of the profession, all in violation of Sections 4(a)(2), (4), and (8) of the Hillsborough County Teacher Tenure Act. (Doc. No. 68, Ex. B).

In order to establish a prima facie case of retaliation, a plaintiff must show "(1) that she engaged in [a] statutorily protected activity, (2) that an adverse employment action occurred, and (3) that the adverse action was causally related to the plaintiff's protected activities." Coutu v. Martin County Board of County Commissioners, 47 F.3d 1068, 1074 (11th Cir. 1995). Defendant contends that it is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff cannot show that her termination was causally related to her request for accommodations. The Court agrees.

Defendant argues that Plaintiff cannot show that there was a casual connection because she cannot show that the decision-makers regarding her termination knew of her request for accommodations. See Grier v. Snow, 2006 WL 3026129, at *2 (11th Cir. October 26, 2006)(stating that in order "[t]o establish a casual connection, a plaintiff must show that the decision-makers were aware of the protected conduct"). Defendant points out that in her deposition, Plaintiff admits that she does not know whether Mr. Martinez shared her request for accommodations with anyone else and that she does not have any knowledge of Mr. Martinez being involved in the decision to terminate her employment. (Doc. No. 67: Plaintiff's depo, p. 42-43). The Court agrees that since Plaintiff has not shown that the decision-makers regarding her termination were aware of her request for accommodations, Plaintiff cannot show a casual connection between her request for accommodations and her termination.

Defendant also argues that Plaintiff cannot show a causal connection because of the length of time between her request for accommodations (the last evidence of which is the September 29, 2002 follow-up letter) and the adverse employment action (the Superintendent recommended her termination on June 22, 2004, and the Board upheld the decision on October 21, 2004). The Court agrees that given the length of time between her request for an accommodation and her termination, and given the lack of any other record evidence that the termination was related to her request for an accommodation, Plaintiff has not shown a causal connection between the two events. See id. at *2, 3 (stating that "[i]n the absence of other evidence of causation, temporal proximity between the protected activity and the adverse action must be close in order to show a causal connection," and finding that an eight month period between the protected activity and the adverse action was insufficient, alone, to satisfy the causal

connection element); see also Higdon v. Jackson, 393 F.3d 1211, 1220, 1221 (11th Cir. 2004)(stating that "[i]f there is a substantial delay between the protected expression and the adverse action, in the absence of other evidence tending to show causation, the complaint fails as a matter of law" and finding that a three month period did not allow a reasonable inference of a causal connection).

The Court notes that Plaintiff argues that she engaged in statutorily protected activity after the September 29, 2002 follow-up letter to Mr. Martinez. Specifically, Plaintiff points to various writings between December 13, 2002 and May 7, 2004. (Doc. No. 26-11: Ex. 8i, 8p, 8q, 8t, 8w, and 8x). However, none of these writings consist of a request for an accommodation for a disability or of a report of being discriminated or retaliated against due to a disability. As such, these letters do not constitute protected activities under the ADA. See McBride v. Hospital of the University of Pennsylvania, No. CIV.A. 99-6501, 2001 WL 1132404, at *2, 7 (E.D. Pa. Sept. 21, 2004)(finding no protected activity when an employee made a general complaint about being treated unfairly; the court stated that expressions of dissatisfaction and grievances about working conditions are not protected activity); Jamal v. Wilshire Management Leasing Corp., 320 F. Supp.2d 1060, 1078-79 (D. Or. 2004)(finding employee's complaint that her manager was a bad manager, but which did not mention age discrimination, was not a protected activity); Hay v. GMAC Mortgage Corp., No. Civ.A.2001-CV-1030, 2003 WL 22133801, at *8 (E.D. Pa. Sept. 15, 2003)(finding employee's complaint of unfair treatment, which did not mention race or discrimination, was not a protected activity).

The Court also notes that Plaintiff points to other adverse employment actions. On pages six through eight of her response to Defendant's motion for summary judgment, Plaintiff points

to certain alleged adverse actions that occurred in 2004.[3] However, given that these events occurred in 2004, there is not enough temporal proximity to support an inference of a casual connection between Plaintiff's request for accommodations and the alleged adverse actions.

Accordingly, for the reasons stated above, the Court finds that Defendant has shown that Plaintiff's retaliation claim fails as a matter of law. As such, the Court grants Defendant's motion for summary judgment on Plaintiff's retaliation claim.

**B. Hostile Work Environment**

Plaintiff also contends that she was subject to a hostile work environment due to her race. In her third amended complaint, Plaintiff states that Jeffrey Pelzer (a co-worker at Bloomingdale High School), Clara Gene O'Dell (head of the vocational department at Bloomingdale High School), Curtis Bowden (Assistant Principal for Curriculum at Bloomingdale High School), and Elizabeth Stelter (Principal at Bloomingdale High School) created the hostile work environment. (Doc. No. 42, ¶ 29).[4]

With respect to Mr. Bowden, Plaintiff testified that he "bullied" her on three occasions, all of which allegedly contributed to the creation of a hostile work environment. (Doc. No. 60:

---

[3]On page ten of her response, Plaintiff vaguely identifies other employment actions, but since she does not point to record evidence to substantiate and describe these employment actions, nor does she give the dates that these actions occurred, the Court cannot consider them as support for her retaliation claim. Without knowing the dates that these events occurred, the Court cannot determine whether there is an inference of a casual connection between her request for accommodations and these events.

[4]Plaintiff does not describe the alleged harassment in her motion for summary judgment or in her response to Defendant's motion. As such, the Court assumes that Plaintiff concedes that Defendant's description of the alleged hostile work environment is an accurate description. As previously stated, the Court "is under no obligation to plumb the record in order to find a genuine issue of material fact." Bender, 2006 WL 1046944, at *17 (citations omitted).

Plaintiff's depo, p. 48-55). The first instance of "bullying" occurred in January of 2004 when Bowden spoke to Plaintiff in a harsh and demanding tone, was condescending in his words and expressions, and allegedly made threatening statements to her. (Doc. No. 60: Plaintiff's depo, p. 48-49, 52). However, Plaintiff cannot recall any of the threatening statements that he made. (Doc. No. 60: Plaintiff's depo, p. 49, 51). Plaintiff walked out the door away from Bowden, and he pursued her with apparent anger, and she walked quickly away from him. (Doc. No. 60: Plaintiff's depo, p. 51).

Another instance of bullying occurred in the Spring of 2003, when Bowden assigned class schedules for the 2003-2004 school year. (Doc. No. 60: Plaintiff's depo, p. 53). Plaintiff asked Bowden if he would adjust the schedule so she would not have to change classes so many times, and Bowden refused. (Doc. No. 60: Plaintiff's depo, p. 53). Additionally, Bowden placed Plaintiff in a classroom with Jeffrey Pelzer, a person that Bowden knew that Plaintiff was not friendly with and who was not friendly towards Plaintiff. (Doc. No. 60: Plaintiff's depo, p. 53).

Another instance of bullying occurred when Plaintiff turned in a report to a department head who did not turn in the report to Bowden. (Doc. No. 60: Plaintiff's depo, p. 54). Thereafter, Plaintiff received a notice from Bowden that her report was due and he called her down to get it. (Doc. No. 60: Plaintiff's depo, p. 54). Plaintiff gave the report directly to Bowden's secretary, and Bowden considered her action of turning the report in to his secretary an act of insubordination. (Doc. No. 60: Plaintiff's depo, p. 54).

When asked why Bowden engaged in this behavior towards Plaintiff, Plaintiff stated that she did not know. (Doc. No. 60: Plaintiff's depo, p. 55). When asked if he acted that way due to her race, Plaintiff responded, "Perhaps." (Doc. No. 60: Plaintiff's depo, p. 55). When asked

why she believed that it was perhaps due to her race, Plaintiff responded that she "didn't say [she] believed that." (Doc. No. 60: Plaintiff's depo, p. 55).

With respect to Mr. Pelzer, Plaintiff contends that he yelled at her in the presence of his students and another teacher in February or March of 2003. (Doc. No. 60: Plaintiff's depo, p. 56-57). Additionally, Plaintiff contends that Pelzer erased her student files from the computer and reported that she left a classroom unattended. (Doc. No. 60: Plaintiff's depo, p. 59-60). Plaintiff contends that Pelzer's actions were due to Plaintiff's race, because "Mr. Pelzer appeared to be a racist." (Doc. No. 60: Plaintiff's depo, p. 61). When asked how he appeared to be a racist, Plaintiff responded, "The way all racists appear to be racists." (Doc. No. 60: Plaintiff's depo, p. 61). When asked why she believed Mr. Pelzer was a racist, Plaintiff responded that she observed him interacting in a negative manner with herself and another African American person. (Doc. No. 60: Plaintiff's depo, p. 62). Plaintiff stated that it was a "gut feeling" that Pelzer's actions towards her was based on her race. (Doc. No. 60: Plaintiff's depo, p. 75).

With respect to Ms. O'Dell, Plaintiff states that O'Dell: (1) was rude and abrasive; (2) told someone that Plaintiff said that she would meet O'Dell at a certain time, when Plaintiff did not say that; (3) did not give Plaintiff her teaching plan until the summer was nearly over; (4) did not provide Plaintiff with the teaching materials she needed, and instead, told Plaintiff to get them from the publisher; (5) spoke to Plaintiff in a condescending manner in front of others; (6) would twist information around to make it appear that Plaintiff provided incorrect information or missed a deadline; (7) would post infractions on the bulletin board, which was humiliating for Plaintiff; (8) made a big deal about Plaintiff not signing in one morning; (9) wrote Plaintiff up for leaving lights on over the weekend, when Plaintiff was not the one who left the lights on;

(10) screamed at Plaintiff one day while she was making copies; and (11) told Plaintiff not to communicate with her via email. (Doc. No. 60: Plaintiff's depo, p. 63-65). When asked if she believed that Ms. O'Dell behaved this was based on Plaintiff's race, Plaintiff responded, "I don't know." (Doc. No. 60: Plaintiff's depo, p. 66).

With respect to Ms. Stelter, Plaintiff contends that on different occasions Ms. Stelter: (1) invited Plaintiff to leave the school and get a job in Pasco County; (2) told Plaintiff that she wanted Plaintiff to leave the school and that if Plaintiff didn't, things would not get any easier; (3) accused Plaintiff of being tardy six times when Plaintiff had only been tardy twice; (4) and stood close to Plaintiff and made inappropriate statements (however, Plaintiff cannot recall the specific statements that were made). (Doc. No. 60: Plaintiff's depo, p. 66-70). Plaintiff contends that Stelter's actions were based on Plaintiff's race. (Doc. No. 60: Plaintiff's depo, p. 71). When asked why she believed that, Plaintiff responded that she didn't know how to explain it and that you could call it a gut feeling. (Doc. No. 60: Plaintiff's depo, p. 71-72).

Defendant argues that it is entitled to summary judgment on Plaintiff's hostile work environment claim. In order to establish a prima facie case of a racially hostile work environment, Plaintiff must show that (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic, her race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and thus create a discriminatorily abusive work environment; and (5) the employer is responsible for that environment under a theory of either direct or vicarious liability. Laosebikan v. Coca-Cola Co., 2006 WL 224167, at *5 (11th Cir. Jan 31, 2006)(citation omitted). Defendant argues that Plaintiff cannot show that the harassment was based on her race

or that the harassment was sufficiently severe or pervasive. The Court agrees.

Plaintiff has not put forth any evidence to show that the alleged harassment was based on her race. In ruling on Defendant's motion to dismiss, the Court warned Plaintiff that if Defendant moved for summary judgment on her hostile work environment claim, she would need to come forth with evidence to show that the alleged harassment was based on her race. (Doc. No. 51, p. 9, n.11). The only basis for finding that the harassment was based on her race is Plaintiff's belief and gut feeling; however, such is not sufficient to withstand a motion for summary judgment. See Laye v. Potter, 2006 WL 1617777, at *5 (W.D. Pa. June 2, 2006)(stating that "speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts"); Chambers v. Heidelberg USA, Inc., 2006 WL 1281308, at *4 (D.N.J. May 5, 2006)(same); Little v. State, 1998 WL 306545, at *6 (E.D.N.Y. June 8, 1998)(same); St. Hilaire v. The Pep Boys-Manny, Moe & Jack, 73 F. Supp.2d 1350, 1360 (S.D. Fla. 1999)(stating that the plaintiff's mere belief, speculation, or conclusion that he was subject to discrimination did not create an inference of discrimination).

Furthermore, the Court agrees that the alleged conduct was not sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive work environment. The "severe or pervasive" element has both a subjective and objective component: "[t]he employee must 'subjectively perceive' the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999)(citation omitted). While in the instant case, Plaintiff subjectively perceived the alleged

harassment to be sufficiently severe and pervasive, the Court finds that her perception was not objectively reasonable.

With regards to the objective component, courts consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. (citations omitted). "[C]ourts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." Id. (citations omitted).

After considering the factors outlined above and considering the totality of the alleged harassing conduct, the Court finds that the conduct complained of was not sufficiently severe or pervasive. Instead, Plaintiff mainly complains about difficulties getting along with people. Furthermore, the Court notes that Plaintiff is quite vague regarding what the alleged rude or condescending remarks consisted of. Title VII is not a "'general civility code.'" Gupta v. Florida Board of Regents, 212 F.3d 571, 583 (11th Cir. 2000)(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

For the reasons explained above, the Court finds that Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim based on race. As such, the Court grants Defendant's motion on this issue.

**IV. Plaintiff's Cross-Motion for Summary Judgment**

Since the Court has granted Defendant's motion for summary judgment, Plaintiff's cross-

motion will be denied. The Court notes that in her motion for summary judgment, Plaintiff raises the new claim of a hostile work environment based on her disability. However, this claim was not clearly pled in her complaint, as the Court noted in its Order on Defendant's motion to dismiss that Plaintiff based her hostile work environment claim on race. (Doc. No. 51, p. 8). If the Court misconstrued Plaintiff's claim, she should have filed something to alert the Court and opposing counsel that she was asserting a hostile work environment based on her disability. She did not do that, and as such, Defendant did not have notice of this new claim. Plaintiff cannot now raise this claim for the first time in a motion for summary judgment.

However, even if the Court did consider the hostile work environment claim based on Plaintiff's disability, it would still fail, because Plaintiff submitted no evidence to show that the alleged harassment was based on her disability. Without such a showing, the claim fails as a matter of law.

**V. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 66) is **GRANTED**;

(2) Plaintiff's Cross-Motion for Summary Judgment (Doc. No. 71) is **DENIED**; and

(3) The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of February, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record
Pro Se Plaintiff